Where are you at? I'm not. May I proceed? I haven't gotten Mr. Topko or Mr. Hodkinson pinned yet. I can't find them in my participant list. Your Honor, this is Mark Hodkinson. I believe I'm there. Oh, there's one. Okay, I've got Mr. Hodkinson. I don't have Mr. Topko. Your Honor, I'm here too. Well, I see we've got divided argument again. Okay, now I've got Mr. Ray. So, Mr. Ray, we're ready. Thank you, Your Honor. Good morning. May I please the court? My name is John Ray and I represent the plaintiff appellant Leroy Leftwich. Cameron Leftwich died in the Dakota County Jail because of the deliberate indifference by both the city of Eagan police department officers who arrested him and the county of Dakota correctional deputies who detained him, all of whom are defendants in their individual capacity in this action, along with the municipal county and city defendants. The capacities of the parties was expressly and unambiguously stated in the party section of plaintiff's complaint. Plaintiff was identified not as an individual, but as the trustee of the statutory class of next of kin to Cameron. That's because that is the capacity in which he was suing on behalf of his son. Each of the municipal defendants were identified in their municipal capacity, the capacity in which they were sued. Each of the individual defendants in the party section were identified as individuals. The capacity and counsel counsel. Your word was, quote, an individual, right? An individual. Yes, correct. Percy, no place to say individually or similar words like individually. Right. Well, I would believe that individual is similar to individually. Yeah, yeah. But I'm asking I'm not arguing this is a point of fact. Is it true? My clerk says that individually is not there. Is that true or false? That is true. Individual. Yeah, go ahead. No, they were identified as an individual. And that was the language. Indeed, that's the language that this court has used in its cases, that the capacity must be identified as an individual. The exact language that was used in the complaint. Our position, quite frankly, is that no person could mistake the capacity in which each party was identified in the party section of the complaint and in which they were sued, which is the very purpose of that section. Each of the individual defendants. Council, what's the standard review on this issue? The pleading issue. What's our standard review? My understanding of the standard review is that this is going to be reviewed de novo as a legal question. That's your understanding. It's your it's your desire, I'm sure. But what's what's the legal basis? The authoritative basis for your understanding? I believe we cited the standard of review with respect to this question in our brief. Oh, I think I think you had that. I think you had the boilerplate. You were doing we were doing summary dismissals. Yes. Summary judgment. They know lawyers get away with try to get away with that all the time. It's the standard review on some issues that that often makes the big difference. Why isn't this abuse? It is. What case says this is not abuse of discretion. Even if it's an abuse of discretion standard, the issue is going to be one to whether there was an erroneous conclusion of fact. That is, in this case, whether, in fact, they were identified as individuals in the party section of the complaint, which the district court suggested. We simply referred to them as individuals, but we didn't just refer to them as individuals. We refer to them as individuals in the party section of the complaint, which has a specific purpose under the federal rules. As well with the issue of the legal standard, we this was came out in oral argument. Our understanding, too, was that the court was operated under an incorrect understanding of the law that only the word individually would suffice. And that only that word could be used to satisfy this court standard, which I'd say that I'd say that was a fair reading of a good number of our cases. I found you found a case where in describing the general issue, we our panel used the end of the word individual. But our cases, which have focused decision wise on this issue, have talked about pleading in the individual capacity, individual capacity, the capacity being critical to the issue. Yes, which is also those cases have said the word capacity is not required that no court has required. But they said that what a circuit case said that no a circuit. It's only endorsed the use of the various different ways in which courts have and affirm the various ways in which the court has accepted this. The type of pleading my my best case in this regard in the 8th Circuit is Jackson vs. Cruz, 873 Fed Second 1105, in which this court, the circuit was very clear that, yes, we have announced a particular standard and and that this is instructional. However, the legal issue is not whether you use the word individual versus individually, but whether you communicate you communicated the individual capacity in which they were being sued. The capacity section is the party section. They were identified that in that section as an individual in that section, which is as clear as one can get in terms of identifying the capacity of a party is to identify that capacity in the party section where under the rules, you identify the capacity in which they are suing or have been sued, which is even further clarified. If you were suggesting, well, individual could mean personhood, legal counsel, counsel. In my recent experience, most of most lawyers just plead the capacity in their caption. They do. They do. Well, why, why, why, why shouldn't we find that not only helpful, but why not require, you know, if the district court that's back to abuse of discretion, why can't the district judge say you didn't do it right? Well, it's not a it's not a because in this case, it's not a question of the discretion of the court in whether we had satisfied its own particular understanding. This is a legal question with respect to abrogation of sovereign immunity and whether we've clearly identified the individual capacity in which these individuals were sued. And so that legal question is simply a question of did you identify them sufficiently and clearly enough? And that's what this court's cases have said with respect to this issue. You know, this doesn't go right. This doesn't go primarily to sovereign immunity. This goes primarily to qualified immunity. And that's that that's that's the that's the bottom line significance of this issue. And that's where it has prompted our case law to say quite to be quite strict on this issue. Otherwise, we get a bunch of cases which which don't permit us to get at what may be the decisive body of law. And I think that then the question is, what is strict individually? Comma, individually doesn't necessarily suggest anything about the capacity. It could be you were suing them individually rather than joint and severally and talking about a lot of you. So a lot of individuals, quote unquote, in their official capacity for purposes of the county of San Francisco versus Brown supervisor liability. Sure. And in those cases, most of the time, if you're simply in the party section section, identifying them as a person, you would say that so and so is a person rather than they are an individual which has a specific legal meaning and significance in this case. Individual means individual capacity. It doesn't mean individual person, official capacity. The suggestion that individually means individual but individual doesn't mean individual is not a matter of strict. It's a matter of sort of going to a level of of extremism almost that avoids the specific question, which is, was this clearly communicated? You were sued as an individual. That's what the party section communicates in this case. Given they were sued in that capacity, they were sued because each either was expressly told by several witnesses or through various records that Cameron had serious violent outbursts, had serious mental health issues and inflicted harm upon himself in a series of recent and violent episodes. And in fact, another person in the very episode for which he was arrested that evening, which demonstrated. Let's go on to the council. Let's go on to the merits. And you lead off your second issue by saying there was overwhelming evidence of deliberate indifference. And then in 10 or 11 pages, you basically say no way circuit cases. So I have to ask you, how would you distinguish our decision in age versus St. Louis County? Eight ninety one third seven twenty one. And if you haven't, you're not familiar with it. I understand. And I was familiar with the lower court decision in that case, not as familiar with the 8th Circuit. The issue here is is not so much a matter of whether the 8th Circuit has addressed this question as much as it is on the facts of this case. Have we established facts sufficient for a reason, a rational juror to make a reasonable inference of knowledge and appreciation of the risk? And here and I believe in distinguishing age that there were numbers of factors, not just one. There were a number of witnesses, not just one, who gave information to both the officers and the county of Dakota correctional deputies that put them on notice. And in fact, demonstrated both a knowledge and appreciation of risk based on two things. One, the facts that were related to him, that Cameron had real mental health issues, had taken a hammer to his head two weeks ago with the claw and drew blood, had jumped out of cars a few dozen times, moving cars, meaning at least 24 times had done these things, had a history of drugs and drug abuse. His girlfriend had communicated that he needed to go to the doctor to be diagnosed because she believed he was bipolar and manic was his behavior, that he couldn't control himself when he's mad, had a history of self mutilation. He's hurtful to himself and in fact has a history of trying to hurt himself. But of course what's balanced against that is all of everything said by Cameron and his mother suggested before and during the arrest, during booking and to the nurse the next morning suggested he wasn't suicidal. I think that this is exactly like the clinical psychologist defendant in age. Well, the issue is not whether he was or wasn't suicidal. It was whether he was likely and had a substantial likelihood of inflicting self harm. And I think if we look at it simply through the suicidal lens and suggest he has to admit he's suicidal or say he wants to kill himself, that's a very high hurdle in suggesting that basically there was knowledge. Is the allegation that the policy itself is unconstitutional, the policy they were applying in the absence of greater evidence of risk? You're basically saying they had to do more than their policy allowed, right? With the exception of the 24 hour issue. Right. Our view is they didn't even follow policy in the in the example, both of the city and the county that with the city, they were required to report this information to the county. They didn't. They did absolutely nothing. And the issue is that these officers individually. That's that's very conclusory. I don't understand why what the city was required to report only if there was a basis to report. No, the the the actual requirement is, were these statements made? It wasn't. Did you feel they amounted to suicide? Did you feel they amounted to what state? Now, I thought we're talking. Are we talking? Mother's statement to the residents are or his his statements in the in the transport van to run quest. All of the statements were required to be reported to the county. In particular, there is a what's what's the site for that? Sure. That's on the that's on the offender tracking form, which we discussed extensively in the briefs on this issue where they're asked. And in fact, we asked the the the 30 basis witness for the city what the offender tracking form was, what it reported. He was very clear. This is information that needs to be communicated to the jail to get the individual in. He made it clear it wasn't just arresting information, but also it was for that person's health and safety. And the form asks. And it's in the record. I can pull the site for the court. Asked, has any family or friends made any statement of mental health issues and has or suicidal tendencies? And we've asked we actually asked even one of the witnesses, defendant Runquist, what do you understand suicidal tendencies to be? I asked him, I said, you say you've been trained. So what does is what reflects or what's symptomatic of mental health issues or suicidality? He said anger. I said, well, can you think of anything else? No. That was the full extent of his understanding and appreciation of symptomology of mental health and suicide risk. The one thing on which he rests and quite frankly, Resnick, defendant Resnick, rest their defense. And a jury can look at that and say, this is what you claim you've been trained on. Anger reflects in a symptomology of suicidality and mental health issues and mental health crisis. Therefore, when you learned of these anger issues, you understood and appreciated there was a substantial risk of both serious bodily harm and suicidality. We have gone through a number of statements that were made and communicated to the county as well as to the city. And it's specifically the both mental health issues and combination of violence and the labeling of Mr. Left, which Cameron left, which is a serious violence threat that that created an inference of a substantial risk of self-inflicted harm of bodily harm, not just suicidality. I see my time has run out. So at this point, we will take a question for you. Yes. Say. Am I correct in understanding that the district court in analyzing the Monell claim. Analyzed whether any of the individual defendants committed a constitutional violation so that even though you were dismissed on the claims against individuals because of this capacity pleading problem. The judge ended up reaching the merits as to each individual through the Monell claim. Yes, that's correct. But that was the extent of the Monell analysis, not as to the custom and practice issues. It only addressed the individual violation. So in order for the capacity pleading issue to make any difference, you'd have to prevail on your Monell appeal. Right. And show that there was an individual violation. I think that there the cases in this court in the 8th Circuit has been clear that you don't necessarily have to have an individual who violated that is an individual defendant liable. But, yes, you have to show an underlying constitutional violation. That is, either by the collective action of the city and or county. Well, respectively, the city or in the county that there was an underlying constitutional violation. Yes. OK, thank you. Thank you. Very good. Thank you, Mr. Topka. Thank you, Your Honor. May it please the court. My name is William Topka and I represent the various county of Dakota defendants, which is the county itself. Your camera is apparently not on, at least on my screen. My camera shows it being on your honor. I cannot see him either. Nor I. I turned it off and turned it back on. Has that done anything? No. Yes, for me, it did. Are we still having issues with the video? Yeah, it flashes. It flashes like you're turning it on and off, but doesn't come on. But but that that's all right. We can we can do it. We can do it. Audio. If it pleases the court, then I'll just continue, please.  So I represent the county of Dakota, Caleb Coker, Kent Timmons and Cody Swanson. And I would first like to address the issue of whether or not appellants properly pled the individual capacity claims. I think it's important to understand that the very fact that we're sitting here arguing about what, quote, an individual end quote means. I think requires an affirmative circuit requires that counsel following up on Judge Collinson's last question to opposing counsel. Why does this matter? Well, we don't even have to get to the merits, your honor. If he didn't properly plead the correct capacities. Well, you have to get to the merits of the Monell claim, though. And my point was the district judge analyzed whether any of the individual defendants violated the Constitution in resolving the Monell claim. So if you prevail on that, defending that judgment, then it would follow that the individuals are out, whether they were pleaded as individual capacity or not. And that's a fair statement, your honor. But I also believe that it's it's fair to conclude that if he didn't plead in the individual capacity, you don't even need to get to the merits argument. Of the Monell claim? Correct. That can't be right. You don't even have to sue an individual to raise a Monell claim. That's that's that's that's over the top. You can't. You haven't got a Supreme Court case for that. Your honors, I would make the argument that the only way the county of Dakota is liable here is through the individuals. Fine, but they don't have to be sued individually. That's that's a fair statement, your honor. All right. But so it doesn't end the case. So why first? Yeah. And if the court would prefer to discuss the merits, I'm happy to go there with. Wait a minute. No, no. This is important. You're saying that there is no Monell claim if they if the individuals who whose responsibility plaintiff must prove for the Monell claim weren't sued in their individual capacities. That seems that's contrary to county is saying, you know, San Francisco versus Brown and every other Supreme Court case I have not read today, but recently. You're you're right, your honor. And I misspoke. I was a little confused there. You're correct. So if you why, why does it why it doesn't get my would I be correct? It only matters if if there if we reverse the district court and concluding there was no individual violation. Then if they were sued in their individual capacities, qualified immunity would have to be addressed. Correct. Your honor. OK, so so we're I think we're up to the merits. OK. And I think it's important to distinguish that there are two sets of defendants here. We've got the city defendants and the county defendants. And I I think that it's important to to understand that what the city defendants knew may be different from what the county defendants knew. And so if you look at the facts as alleged by the appellant, I think the only facts that were communicated to the county include the following that Mr. Left which had been arrested for a violent crime. He had been allegedly diagnosed with dual disorder that he was unemployed. He had no stable home and was allegedly allegedly manic depressive. And so from those facts, as it relates to the county defendants, they have to support an inference that Mr. Left, which posed a substantial harm to himself. And we don't believe that it's fair that any of those particular facts in and of themselves or held together support an inference that he was suicidal. There is a significant case law in the circuit that the fact that you're arrested for a violent crime in and of itself isn't enough. There's scores of cases where simply having dual disorder isn't enough. But even those held together, they may show or may tend to indicate that the person has a mental illness, but certainly don't indicate that Mr. Left, which was suicidal. And I would also argue that in addition to those particular facts, even if they did show some sort of inference of suicidal tendencies, the appellant still needs to prove that the county defendants actually drew the inference that Mr. Left, which was in fact suicidal. And that's contrary to the evidence here. All of the county witnesses testified that they didn't believe that he was suicidal. And in fact, Cameron left, which his parents testified to the same thing. So on both accounts, appellants claim fails on the merits. And I do want to reiterate again that a lot of the facts that the appellant alleges in their brief did not make their way to Dakota County. Dakota County doesn't have access to any of the investigation files from the from the city or their police report. All they have is the offender tracking form, which indicated that he had no specific indication of suicidal tendencies and their own analysis. And so based upon those, we believe that the court should affirm the district court and dismiss the complaint with prejudice. Thank you, your honors. Thank you, Mr. Hopkinson. Thank you, Judge. My name is Mark Hopkinson. I represent the city of Egan and its employees who are sued. I'll jump right to the issue that the court has gone to, and that's the merits. I believe that the plaintiff failed to and as the district court ruled, failed to demonstrate the existence of any genuine issues of material fact as to whether these officers had actual knowledge and or whether they were deliberately indifferent to it. I'll go through those three officers really quickly. And and I urge the court to watch the and listen to the video, the squad video and audio. So Officer Runquist went to the hospital, took Mr. Leftwich from there to the county jail. It was within 50 minutes. Mr. Leftwich is calm, quiet at times, articulate, not under the influence of alcohol or drugs, talking about his future. He's self-aware about his issues with anger management. And at the end of that, based on that, Officer Runquist fairly and adequately concluded that there was no likelihood of a suicide risk or let alone a substantial likelihood. And his and after the fact, his assessment is confirmed by numerous people, including all the deputies doing the intake where Mr. Leftwich himself answered questions. No, that he did not have raised any risk. The contract nurse who reviewed the file had no concern. The probation officer, the social worker court personnel at his at his hearing. And and so Officer Runquist had no reason to report that information to anyone else within the city or within the county. Officer Renzi interviewed his role only was interviewing the victim and Mr. Renzi testified that when he asked the mom if Mr. Leftwich was suicidal, she said no. Mom testified she had no recollection of that conversation. That does not create a genuine issue of material fact. It is undisputed that the officer asked the question and that's the answer he got. Question on that, Mr. Hodkinson. Did mom say also that she believed. At the time that the son was suicidal. She did testify in her deposition that she thought that yes, but that is not the same as test. I'm sorry, Your Honor. Just to follow. I think the argument from the other side then is that there is a genuine dispute of fact about whether she made the statement to Resni. Because if she doesn't remember saying it and she says she didn't believe it. Then one might infer that she wouldn't have said it. Well, I guess. Yes. But then I also would point out that mom talked to Mr. Leftwich over that whole 30 hour or 27 hour period. He was in the jail five or six times. And at none of those times did Mr. Leftwich express any anything that caused her concern about him being suicidal. She would have done something about it. I think that also, I guess, you know, officer Renzi's testimony is that through speaking with the mom and the victim, he believed this was an anger issue, not a mental health issue. And again, in terms of whether Mr. Officer Renzi had actual knowledge. I don't believe that that mom saying that she thought now after the fact thought that raises a question. I think the jury. I think the judge rightly found that no reasonable jury, given all of these facts together, could come to that conclusion. And finally, about the tracking form issue. I believe that district court was corrected. She did not have knowledge. There's no. And when she answered those two questions on the form at the time, there's that's undisputed. There's certainly no evidence of any willfulness or maliciousness. And I would point out that one of the county deputies, despite argument to the contrary, and including the district court, the deputy testified that he did not would not automatically place someone on a higher watch. If one of those boxes had been checked, that it depended on the individual case by case assessment being made at the jail. And that's the city Appendix 207. That's pages 43 and 44 of Deputy Coker's testimony. I also jump to the issue if the court believes that the district court erred in finding that this portion of the form was a discretionary act or conduct rather than I mean, if the district court erred finding it discretionary and that was ministerial, that even then there was no duty on this sergeant or by law or statute creating a duty to do some kind of assessment or doing anything more. And in addition, then, in applying that to the assessment of the other claims or the other claims being made, there's no proximate cause, at least in that in terms of the jail, something that happens in the jail 30 some hours or approximately 30 hours later. And again, I think the people who were in the best position to assess were Mr. Leftwich himself, mom, the people with him, the victim. None of those people raised an issue about him being a suicidal risk. I just in overall, I believe the law makes sense to these undisputed facts. Could you address what seems to be the main argument that there was disclosure of suicidal risk, which is that I forget if it was the mother or the girlfriend or both told Resney that he had hit himself with the hammer, jumped out of cars and needed mental health. And again, Officer Rensky made a conclusion based on that, him asking mom if she was suicidal, which is the earlier question you raised, Judge. And I, you know, I don't think that officer there's no proof that an officer resonate then took that knowledge and then thought that equated to a substantial likelihood of a risk of suicide that merely this gentleman had an anger problem. And certainly that was concluded by all the again, the numerous people at the county over 30 hours that he was there before he unfortunately committed suicide. If unless the court has any other questions, thankfully, thank you very much. And hopefully the city asked that the court affirmed that district courts vision. Thank you. And your honor, I know my time was expired, but I would request two minutes. What did I do? We can hear you, Judge Loken. Now, there you go. Yeah. Well, I was going to, I was going to give you two minutes, Mr. Ray. But now, now I haven't got your, is your camera on? It is on. I can turn it off and back on. Well, it's the other two. Have you? Let's just let's just finish up. OK, as to the merits, I think that this now hearing the arguments, it really sheds light on the central issue, which is there are substantial and material disputed issues of fact as to who said what, when, what someone did or didn't say, and whether we can lend credibility to denials. The suggestion that seems to be raised repeatedly is if an officer denies having a knowledge or an inference of suicidality or or risk of harm and self-inflicted harm, then there's no evidence that can defeat that. But here we have substantial evidence. The suggestion that was made. Counsel, what amounts to deliberate indifference? That's that's the standard. That's the most difficult for you. Right. Well, the deliberate indifference is that there is a knowledge of a substantial risk of of self-inflicted harm here and then that nothing was done in deliberate disregard of that risk. Here, there's no dispute that nothing was done. And the question is whether they had knowledge and appreciation of a risk. But the dispute is, well, only four things were raised through, for example, Deputy Coker. We've laid out at least 14 different issues and facts that there was a disclosure of a mental illness that not only was there a disclosure of a mental illness, there was a disclosure that he was not taking any medication for his disorder or being treated for his disorder, that he had been involved in a domestic assault and violence that was a serious offense. And in fact, and everyone seems to overlook this fact, but it's mentioned in our brief that there was a blinking red suicide rating light that came on in the jail PCI system during the booking because of Cameron's disclosures that these are there's a multitude of factors that we've raised that are simply being glossed over, then not addressed at all. We've laid them out in our brief. And in fact, they are exactly consistent with the training that these officers claim they received as to how to identify suicidality and risk of harm. All of their very good counseling counsel. You're here. Overtime is up. Thanks. Thanks. But it has been well briefed and argued and we'll take it under advisement.